UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DERRICK J. SIMS,

    Plaintiff,

v.

RALPH DIAZ, et al.,

    Defendants.

Case No. 19-cv-05445-SI

**ORDER OF DISMISSAL WITH LEAVE TO AMEND AND DENYING PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 1, 2

Derrick J. Sims filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 concerning conditions at Pelican Bay State Prison. His complaint is now before the Court for review under 28 U.S.C. § 1915A. Sims' motion for a preliminary injunction also is before the court for review.

**BACKGROUND**

This action concerns events and omissions that allegedly occurred while Sims was housed in Pelican Bay's Restricted Custody General Population (RCGP) for "alleged safety concerns." Docket No. 1 at 8. The RCGP is described on the website of the California Department of Corrections and Rehabilitation (CDCR) as "a 96-bed unit designed as a transitional program for inmates who are recently released from the SHU to GP that have custodial/security/safety concerns." https://www.cdcr.ca.gov/facility-locator/pbsp.

The complaint alleges the following:

After fourteen years in solitary confinement, Sims was moved to the RCGP on March 24, 2016. The CDCR's Department Review Board (DRB) determined that Sims would be housed in the RCGP due to safety concerns expressed by multiple confidential informants and sources deemed

reliable by the CDCR. Docket No. 1 at 8.

The DRB controls whether an inmate in the RCGP will be released from the RCGP. From 2016 through 2018, "ICC members were not referring anyone to DRB for consideration of release." *Id.* at 8. In the RCGP, inmates are far from family members and receive few visits because visiting days are on weekdays rather than on weekends. There are no vocational training jobs and there is limited yard programming in the RCGP. *Id.* at 8-9.

Sims is being retained in the RCGP "with his CDCR documented known non-confidential and confidential enemies," some of whom are informants against him. *Id.* at 9. This shows a "blatant [r]eckless disregard" for his well-being. *Id.*

On several occasions in 2016 and 2017, prison officials received information that Sims was targeted for assault by other inmates. *Id.* at 9-10, 11-12. Information that Sims was targeted for assault was disclosed to Sims in 2017 and later. One such disclosure was a July 10, 2017 confidential memorandum that was disclosed to Sims on February 1, 2019 by CCII Durham. *Id.* at 10.

Sims was attacked on three occasions in the RCGP. The first attack occurred on July 18, 2017, when Sims was assaulted by another inmate and sustained multiple puncture wounds and permanent nerve damage to his right thumb. *Id.* at 10.

The second attack occurred on August 6, 2017, when there was a "botched attempted stabbing assault that turned into a m[e]lee" involving Sims and other inmates in which Sims was the intended target. *Id.* The inmates were then handcuffed. As handcuffed inmates were being picked up from the ground where they had laid prone, Sims "kicked another inmate in the face." *Id.* Three to six seconds after Sims kicked the inmate, correctional officer (C/O) McDonald took Sims to the ground face first, rammed his knee into Sims' back and applied pressure until both of Sims' shoulders touched the ground – all while Sims was not resisting. *Id.* C/O McDonald's actions caused severe pain and impeded Sims' breathing. *Id.* Correctional sergeant Silva asked for Sim's prisoner identification card. C/O McDonald retrieved Sims' prison identification card from Sims' sock and gave it to Silva; at the same time, McDonald took and did not return to Sims or log into evidence the address books that were also in Sims' sock. *Id.* at 11. Sims later asked for the address

United States District Court
Northern District of California

books to be returned and McDonald said he did not have them. *Id.* Sims calls McDonald's actions retaliatory. *Id.*

The third attack occurred on August 26, 2018, when two inmates assaulted Sims from behind. During the attack, C/O Hamner shot Sims twice with the 40-mm gun. *Id.* at 12. Sims suffered multiple injuries, puncture wounds, and two wounds from the 40-mm gun. (The medical report for this date states that Sims refused medical treatment and was cleared for return to administrative segregation within a half-hour. Docket No. 1-5 at 9.) Several months later, on January 28, 2019, CCII Durham wrote a "partially falsified" chrono about the attack. Docket No. 1 at 12.

Sims has seen "Gladiator" style fights at RCGP that are being set up by prison administrators. *Id.* at 8. Various inmates fought with each other at RCGP. *Id.* at 12-14.

## DISCUSSION

A. <u>Review of Complaint</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The complaint has several deficiencies. Leave to amend will be granted so that Sims may file an amended complaint in an effort to cure these deficiencies.

Eighth Amendment - failure to protect: The Eighth Amendment's Cruel and Unusual Punishments Clause requires that prison officials take reasonable measures to protect prisoners from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

The complaint fails to state a claim against any particular defendant for deliberate indifference to Sims' safety. The complaint adequately identifies an objectively serious condition, i.e., Sims was attacked on several occasions after other inmates had targeted Sims for attack. But the complaint does not allege facts that plausibly suggest that anyone acted with deliberate indifference to a known risk to Sims' safety. The complaint and exhibits suggest that he was in danger from a prison gang without regard to the particular facility he was in. The complaint does not allege, and the exhibits do not suggest, for example, that a defendant knew of a specific threat to Sims at RCGP or that a defendant made him go to the yard knowing that also in that yard were members of the gang that had targeted Sims for assault. Moreover, the Eighth Amendment requires prison officials to take reasonable steps to abate a threat to an inmate, and the complaint does not contain allegations that reasonable steps were not taken by particular defendants who were aware of the threat to Sims' safety. The RCGP apparently houses people who have safety concerns, so it may be a place where one might expect an inmate who had been targeted for attack to be housed to protect him from, rather than to expose him to, an attack. Prison officials have different options as to how they will protect an inmate in danger of attack, so it does not necessarily follow that a threat plus an attack necessarily means that any particular prison official has been deliberately indifferent to the attacked inmate's safety. In his amended complaint, Sims must allege facts suggestive of deliberate indifference by each defendant he proposes to hold liable on this claim.

4

The complaint describes particular conduct by CCII Durham, but does not state a claim against him for deliberate indifference to Sims' safety. CCII Durham allegedly (a) disclosed in February 2019 a confidential memorandum written in July 2017 that stated that Sims was targeted for assault, and (b) wrote a "partially falsified" chrono several months after Sims was attacked in August 2018. Docket No. 1 at 10, 12. As to the late disclosure of the threat, the complaint indicates that Sims was already made aware in 2017 from other persons that there was confidential information that he was targeted for assault. As to the "partially falsified" chrono, Sims does not explain how a document written several months after an attack reflected deliberate indifference to safety or otherwise had any adverse impact on him.

Due Process: The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487. In addition to showing a deprivation of a liberty interest of real substance, a plaintiff must

show that sufficient procedural protections were not provided in connection with that deprivation to state a due process claim.[1]

Sims uses words suggesting he wants to allege a due process claim – e.g., a court "determined the RCGP creates a liberty interest," Docket No. 1 at 8, and there is an "atypical and significant hardship," *id.* -- but does not articulate any coherent due process theory. The complaint does not state a due process claim because it fails to allege facts showing the deprivation of a liberty interest of real substance and fails to identify the procedural protections that should have been but were not provided before that deprivation. The complaint also fails to adequately link any defendants to a due process claim.

<u>Excessive force</u>: An Eighth Amendment violation may occur when prison officials "maliciously and sadistically use force to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Liberally construed, the complaint states a § 1983 claim against C/O McDonald for the use of excessive force on Sims on August 6, 2017. Liberally construed, the complaint also states a § 1983 claim against C/O Hamner for the use of excessive force when he allegedly shot Sims on August 26, 2018.

<u>Retaliation</u>: Within the prison or jail context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote

---

[1] When there is a deprivation of a liberty interest of real substance, the procedural protections to which the prisoner is entitled depend on whether the deprivation results from an administrative decision or a disciplinary decision. If it is an administrative decision, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the reason segregation is being considered, and allow the prisoner to present his views. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100, 1104-05 (9th Cir. 1986). There also must be some evidence to support the prison officials' decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). If it is a disciplinary decision, the procedural protections required for the hearing include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). There also must be some evidence to support the disciplinary decision, *see Superintendent v. Hill*, 472 U.S. at 454, and the information that forms the basis for the decision must have some indicia of reliability, *see Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

omitted).

The complaint fails to state a claim against McDonald for retaliation because Sims has not made plausible allegations that adverse actions were taken by McDonald because of Sims' exercise of his constitutional rights. McDonald allegedly used excessive force and took Sims' address book after Sims kicked another inmate in the face. Sims was not engaged in constitutionally protected activity when he kicked another inmate in the face. Any adverse action that was taken in response thereto would not support a retaliation claim.

Lost/stolen address books: Allegations that a plaintiff has been deprived of his property negligently or intentionally without a pre-deprivation hearing do not state a due process claim under § 1983 if the deprivation was random and unauthorized, *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property), because California provides an adequate state post-deprivation remedy, *see Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process).

The allegation that C/O McDonald lost or stole Sims' address books shows a random and unauthorized property deprivation that is not actionable under § 1983. The loss or theft of the address books might support a state law claim, however.

State law claims: The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present his claim to the California Victim Compensation and Government Claims Board ("Board") before he may file an action for damages against a California governmental entity or employee "for death or for injury to person or to personal property." Cal. Gov't Code § 911.2; *see* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2. The Government Claims Act has strict time limits for filing such a claim with the Board *and* for filing an action in court after the rejection of such a claim. A claimant must present his claim to the Board within six months of the accrual of the cause of action. *See* Cal. Gov't Code

7

§ 911.2. Additionally, an action against a governmental entity or employee covered by the claims-presentation requirement must be filed within six months following written notice of rejection of the claim by the Board. *See* Cal. Gov't Code § 945.6(a)(1). Timely claim presentation is "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant." *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004). The failure to include the necessary allegations about claim presentation makes the complaint subject to attack for failure to state a cause of action. *Id.*

Sims alleges that he filed a claim with the Board. *See* Docket No. 1 at 8; *see also* Docket No. 1-2 at 13-14. The complaint fails to state a claim for any state law violation because the complaint does not allege if, or when, the claim was rejected by the Board. He must allege facts showing when he presented his claim and when that claim was rejected, so that it may be determined whether this action was filed within the time limit for any state law claim. Sims also must identify the particular state law claims he asserts and link individual defendants to each of those claims.

<u>Eleventh Amendment immunity</u>: The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985). Eleventh Amendment immunity also extends to suits against an arm of the state, such as the CDCR and prisons within the CDCR. *See Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity). All § 1983 claims against the CDCR are dismissed without leave to amend because this defendant has Eleventh Amendment immunity.

Eleventh Amendment immunity also extends to state officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). Claims for injunctive relief against the individual defendants sued in their official capacity may be pursued, however, because in *Ex parte Young*, 209 U.S. 123 (1908), the U.S. Supreme Court held that a suit against a state official seeking prospective injunctive relief from unconstitutional state action is not considered an action against the state. All § 1983 claims for damages against the individual defendants sued in their official capacities are dismissed because Eleventh Amendment immunity shields defendants

from damages claims to the extent they are sued in their official capacities. Section 1983 claims for prospective injunctive relief may be brought against individual defendants sued in their official capacities. And, of course, § 1983 claims for damages against the individual defendants sued in their individual capacity also may be brought.

Other inmates' problems: Sims does not have standing to allege claims about violations of other inmates' rights. Thus, he may not allege claims that other inmates were injured in fights allegedly set up by prison officials. *See Russell v. United States,* 308 F.2d 78, 79 (9th Cir. 1962) ("a litigant appearing in propria persona has no authority to represent anyone other than himself"). He can only assert claims about violations of his own constitutional rights.

Linking defendants to the claims: With only a couple of exceptions -- i.e., the excessive force and address book claims -- the complaint does not adequately link any defendant to any legal claim. The complaint has a 14-page statement of facts, followed by several legal claims against groups of defendants. *See, e.g.,* Docket No. 1 at 14. The complaint does not adequately connect the individual defendants to the alleged wrongdoing because it does not clearly describe what each of them did or failed to do that violated Sims' constitutional rights. In his amended complaint, Sims must be careful to allege facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). There is no respondeat superior liability under § 1983, that is, there is no liability under section 1983 solely because one is responsible for the actions or omissions of another. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

B. <u>The Motion For A Preliminary Injunction</u>

Sims moves for a preliminary injunction compelling defendants to stop violating his constitutional rights and to transfer him to Corcoran State Prison's RCGP. Docket No. 2. He argues that "defendants have displayed a reckless disregard for his life, and will continue to do so absent an injunction from the court." *Id.* at 2.

The standards for a preliminary injunction are the same as those for a temporary restraining order. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).[2] The irreparable injury must be both likely and immediate. *See id.* at 22; *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.")

Sims is not entitled to a preliminary injunction in this action. The evidentiary support for the requested preliminary injunction falls far short of showing that irreparable harm is likely and imminent if interim relief is not granted. Sims does not provide evidence to establish that he currently is in danger in the Pelican Bay RCGP or that a transfer to the Corcoran RCGP will alleviate the alleged problem that prison gang members have targeted him for assault. The complaint also lacks sufficient factual allegations to allow the court to determine that there is a likelihood of success on the merits on the Eighth Amendment failure-to-protect claim against any particular defendant. As discussed above, the allegations of the complaint do not plausibly suggest that any defendant has

---

[2] *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions in the Ninth Circuit. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under the "sliding scale" approach – also dubbed the "serious question" test in *Alliance for Wild Rockies* -- "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations omitted).

acted with deliberate indifference to Sims' safety. He does not meet his burden to demonstrate that he will suffer immediate and irreparable injury without a preliminary injunction. For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED. Docket No. 2.

## CONCLUSION

The complaint is dismissed with leave to amend so that plaintiff may attempt to cure the several deficiencies discussed in this order. The amended complaint must be filed no later than **November 15, 2019**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of all claims except those identified as cognizable in this order.

The motion for a preliminary injunction is DENIED. Docket No. 2.

**IT IS SO ORDERED**.

Dated: October 9, 2019

SUSAN ILLSTON
United States District Judge