UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DERRICK J. SIMS,

    Plaintiff,

v.

RALPH DIAZ, et al.,

    Defendants.

Case No. 19-cv-05445-SI

**ORDER OF SERVICE**

Re: Dkt. Nos. 13, 14

Derrick J. Sims filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 concerning conditions at Pelican Bay State Prison. The Court reviewed the complaint and dismissed it with leave to amend to cure several deficiencies. *See* Docket No. 9. He then filed an amended complaint. His amended complaint is now before the Court for review under 28 U.S.C. § 1915A. His request for appointment of counsel also is before the Court for review.

**BACKGROUND**

This action concerns events and omissions that allegedly occurred while Sims was housed in Pelican Bay's Restricted Custody General Population (RCGP) for "safety concerns." Docket No. 13 at 11. The RCGP is described on the website of the California Department of Corrections and Rehabilitation (CDCR) as "a 96-bed unit designed as a transitional program for inmates who are recently released from the SHU to GP that have custodial/security/safety concerns." https://www.cdcr.ca.gov/facility-locator/pbsp.

The amended complaint alleges the following:

After fourteen years in solitary confinement, Sims was moved to the RCGP on March 24, 2016. The CDCR's Department Review Board (DRB) determined that Sims would be housed in

the RCGP due to safety concerns expressed by multiple confidential informants and sources deemed reliable by CDCR officials. Docket No. 13 at 11-13.

The DRB controls whether an inmate in the RCGP will be released from the RCGP. From 2016 through 2018, warden Robertson, as well as defendants Bradbury, Neilson, and Durham (who were on the ICC) "were not referring RCGP inmates to DRB for consideration for release." *Id.* at 13. Under prison policy, staff is supposed to provide timely ICC hearings to assess the appropriate programming assignment when, for example, the inmate is in danger. *Id.*

On several occasions in 2016 and 2017, prison officials received information that Sims was targeted for assault by other inmates. *See, e.g., id.* at 13-31. Prison officials did not take reasonable steps to address the threat to Sims' safety, such as moving him to a different facility. Prison officials sometimes delayed informing Sims of the threat to his safety.

Sims was attacked three times while he was in the RCGP. He was stabbed by an STG[1] inmate on July 18, 2017; he was subjected to a "botched attempted stabbing assault" on August 6, 2017; and he was attacked on August 26, 2018, by two inmates who tried to kill him. Docket No. 13 at 23-25, 33. Starting before these attacks, defendants were aware that there were threats against Sims – specifically, that Sims was targeted for assault by affiliates of an STG. Although aware that Sims was targeted for attack, defendants failed to move him away from the RCGP or take other reasonable measures to protect him.

On the second occasion that Sims was attacked (i.e., on August 6, 2017), the inmates were handcuffed and put in a prone position. Docket No. 13 at 25. As handcuffed inmates were being picked up from the ground, Sims "kicked another inmate in the face." *Id.* Three to six seconds after Sims kicked the inmate, correctional officer (C/O) McDonald took Sims to the ground face first,

---

[1] A security threat group (STG) appears to be the new moniker for what formerly was called a prison gang. A regulation defines an STG as "any ongoing formal or informal organization, association, or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing, threatening, financing, soliciting or committing unlawful acts, or acts of misconduct." Cal. Code Regs. tit. 15, § 3000. An STG-I designation is used for, among other groups, "traditional prison gangs or similar disruptive groups of gangs that the department has certified to have a history and propensity for violence and/or influence over subservient STGs." *Id.* And an STG-II designation "may include, but is not limited to, traditional disruptive groups/street gangs." *Id.*

rammed his knee into Sims' back and applied pressure until both of Sims' shoulders touched the ground – all while Sims was not resisting. *Id.* C/O McDonald's actions caused severe pain and impeded Sims' breathing. *Id.* Correctional sergeant Silva asked for Sim's prisoner identification card. C/O McDonald retrieved Sims' prison identification card from Sims' sock and gave it to Silva; at the same time, McDonald took and did not return to Sims or log into evidence the address books that were also in Sims' sock. *Id.* Sims later asked for the address books to be returned and McDonald said he did not have them. *Id.* Sims calls McDonald's actions retaliatory "for [McDonald] having to do extreme paper work." *Id.* at 27.

During the third attack on Sims (i.e., on August 26, 2018), C/O Koons and Calkins shot Sims, each firing one shot with the 40 mm gun while Sims was being stabbed by other inmates. *Id.* at 33. (The medical report for this date states that Sims refused medical treatment and was cleared for return to administrative segregation within a half-hour. Docket No. 13-1 at 67.)

**DISCUSSION**

A.  Review of Amended Complaint

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Eighth Amendment - failure to protect: The Eighth Amendment's Cruel and Unusual Punishments Clause requires that prison officials take reasonable measures to protect prisoners from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The

3

failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

Liberally construed, the amended complaint states an Eighth Amendment claim against defendants Gipson, Diaz, Allison, Robertson, Durham, Neilson, Bradbury, Pepiot, Bell, Burris, Gaona, Golden, and Holden for deliberate indifference to a risk to Sims' safety. These defendants allegedly learned from confidential sources and reports that Sims was targeted for attack by affiliates of an STG, yet retained Sims in the RCGP where affiliates of the STG were present. One or more of the attacks on Sims allegedly occurred after these defendants retained Sims in the RCGP while knowing of the danger to him. (To be clear, the amended complaint does not allege, and the court does not recognize, a claim that the original placement of Sims in the RCGP reflects deliberate indifference to his safety.)

Excessive force: An Eighth Amendment violation may occur when prison officials "maliciously and sadistically use force to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Liberally construed, the amended complaint states a § 1983 claim against C/O McDonald for the use of excessive force on Sims on August 6, 2017, after Sims kicked another inmate in the face. Also, liberally construed, the amended complaint also states a § 1983 claim against C/Os Coons and Calkins for the use of excessive force when they allegedly shot Sims on August 26, 2018.

Due process: The court explained in the order of dismissal with leave to amend the basic requirements for a due process claim, i.e., that Sims had to allege the existence of a constitutionally protected interest, such a liberty interest, and that he had to identify the procedural protections not provided to him before he was deprived of that interest. *See* Docket No. 9 at 5-6. The Court explained that the original complaint "does not state a due process claim because it fails to allege facts showing the deprivation of a liberty interest of real substance and fails to identify the procedural protections that should have been but were not provided before that deprivation." Docket

No. 9 at 6. That problem persists in the amended complaint: Sims mentions the phrases "due process" and "protected liberty interest," and claims he was denied notice and an opportunity to be heard, but he fails to allege a coherent due process claim. For example, he alleges that he was not given a hearing when the CDCR-1030 forms were disclosed or the prison officials learned of the threat against him, but this does not show that he was subjected a change in condition so severe as to implicate the Due Process Clause itself or one that amounted to a deprivation of a liberty interest of real substance. *See* Docket No. 9 at 5-6 (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). The amended complaint fails to state a due process claim because no facts are alleged that plausibly show the deprivation of a constitutionally protected liberty or property interest, such that any procedural protections were necessary. Further leave to amend will not be granted because it would be futile; the court already explained what was required to state a due process claim and Sims was unable or unwilling to make the necessary allegations.

Retaliation: Within the prison or jail context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Sims alleges that C/O McDonald did not return seized address books in retaliation "for [McDonald] having to do extreme paper work." Docket No. 13 at 27. The amended complaint fails to state a claim against McDonald for retaliation because Sims has not made plausible allegations that adverse actions were taken by McDonald because of Sims' exercise of his constitutional rights. The allegation that McDonald acted in retaliation for having to do a lot of paperwork does not show that Sims was engaged in protected conduct. McDonald allegedly used excessive force and took Sims' address book after Sims kicked another inmate in the face. Sims was not engaged in constitutionally protected activity when he kicked another inmate in the face. Any adverse action that was taken in response thereto would not support a retaliation claim. Further leave to amend will not be granted because it would be futile; the court already explained what was required to state

5

1    a retaliation claim and Sims was unable or unwilling to make the necessary allegations.

2    <u>State law claims</u>: Sims alleges that his address books were lost or stolen by a defendant. As the Court explained in the order of dismissal with leave to amend, the allegation that C/O McDonald lost or stole Sims' address books shows a random and unauthorized property deprivation that is not actionable under § 1983. Docket No. 9 at 7. The court noted that the loss or theft of the address books might support a state law claim, but a plaintiff must allege compliance with the California Tort Claims Act to state such a claim. *Id.*

The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present his claim to the California Victim Compensation and Government Claims Board ("Board") before he may file an action for damages against a California governmental entity or employee "for death or for injury to person or to personal property." Cal. Gov't Code § 911.2; *see* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2. The Government Claims Act has strict time limits for filing such a claim with the Board *and* for filing an action in court after the rejection of such a claim. A claimant must present his claim to the Board within six months of the accrual of the cause of action. *See* Cal. Gov't Code § 911.2. Additionally, an action against a governmental entity or employee covered by the claims-presentation requirement must be filed within six months following written notice of rejection of the claim by the Board. *See* Cal. Gov't Code § 945.6(a)(1). Timely claim presentation is "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant." *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004). The failure to include the necessary allegations about claim presentation makes the complaint subject to attack for failure to state a cause of action. *Id.*

Here, Sims alleges that he filed a claim with the Board on or about April 22, 2019, and that he received no response. *See* Docket No. 13 at 11. The claim was dated March 22, 2019, Docket No. 13-1 at 30, more than nineteen months after the accrual of the cause of action on August 6, 2017, when the address books were lost or stolen). The amended complaint fails to state a claim for a state law violation because the claim plainly was not presented within six months of the accrual of the cause of action, as required by California Government Code § 911.2. *See Bodde*, 32 Cal. 4th

at 1240. The state law claim is dismissed. Further leave to amend will not be granted because it would be futile: the Court already explained what Sims needed to allege regarding presentation of the claim to the Board and he was unable or unwilling to do it.

Eleventh Amendment immunity: The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985). Eleventh Amendment immunity also extends to suits against an arm of the state, such as the CDCR and prisons within the CDCR. *See Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity). Eleventh Amendment immunity also extends to state officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). Claims for injunctive relief against the individual defendants sued in their official capacity may be pursued, however. *See Ex parte Young*, 209 U.S. 123 (1908) (suit against a state official seeking prospective injunctive relief from unconstitutional state action is not considered an action against the state).

Sims seeks damages and injunctive relief in his amended complaint in which he sues defendants in their official and individual capacities. All § 1983 claims for damages against the individual defendants sued in their official capacities are dismissed because Eleventh Amendment immunity shields defendants from damages claims to the extent they are sued in their official capacities. The § 1983 claims for prospective injunctive relief may go forward against individual defendants sued in their official capacities and the § 1983 claims for damages may go forward against the individual defendants sued in their individual capacity.

B.  Request For Appointment Of Counsel

Sims has requested that counsel be appointed to represent him in this action. Docket No. 14. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits

7

and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not present. There does not appear to be a likelihood of success on the merits; Sims was able to adequately articulate his claims *pro se*; and Sims' claims do not appear to be particularly complex. The request for appointment of counsel therefore is DENIED. Docket No. 14.

**CONCLUSION**

1.  Liberally construed, the amended complaint states (1) a cognizable Eighth Amendment claim against defendants Gipson, Diaz, Allison, Robertson, Durham, Neilson, Bradbury, Pepiot, Bell, Burris, Gaona, Golden, and Holden for deliberate indifference to a risk to Sims' safety; and (2) a cognizable claim against defendants McDonald, Coons, and Calkins for the use of excessive force. All other claims and defendants are dismissed.

2.  The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the amended complaint, and a copy of this order upon the following defendants:

    - Kathleen Allison (deputy director of CDCR facility operations)
    - Ralph Diaz (secretary of CDCR)
    - Connie Gipson (director of adult institutions at CDCR)
    - Amanda Neilson Hernandez (correctional counselor II)
    - C. Durham (correctional counselor II)
    - A. Pepiot (associate warden)
    - R. Bell (chief deputy warden)
    - D. Bradbury (ICC chairman)
    - correctional officer Koons
    - correctional officer Calkins
    - correctional officer Will McDonald
    - Jim Robertson (warden)
    - correctional officer E. Gaona
    - correctional officer S. Burris (institutional gang investigator)
    - correctional officer B. Golden
    - correctional officer J. Holden

Defendants Allison, Diaz, and Gipson apparently work at the headquarters of the California Department of Corrections and Rehabilitation in Sacramento. All other defendants apparently work

8

at Pelican Bay State Prison.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

   a. No later than **May 1, 2020**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **May 29, 2020**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

   c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **June 12, 2020**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

1  If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

9. Plaintiff's motion for appointment of counsel is DENIED. Docket No. 14.

**IT IS SO ORDERED**.

Dated: February 10, 2020

SUSAN ILLSTON
United States District Judge